JUDICIARY COMMISSION OF LOUISIANA

WEIMER, Justice.
| ¶ This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana (Commission), pursuant to La. Const, art. V, § 25(C), that James J. Best, a judge for the Eighteenth Judicial District, Parishes of Iber-ville, Pointe Coupee, and West Baton Rouge, committed misconduct and should be suspended for thirty days and ordered to reimburse the costs incurred in the Commission’s investigation and prosecution of this case. Judge Best did not contest the recommendation and, along with the Commission, filed a joint motion urging this court to accept and implement the recommendation as a consent discipline. This court rejected the joint motion and docketed the case for a full evaluation of the record. The court was particularly interested in ascertaining whether there was sufficient evidence to support the Commission’s finding that Judge Best acted without actual bias or prejudice when improperly terminating the probation of an individual. Judge Best had stipulated to investigating the probationer’s background through ex parte communications and stipulated he adjudicated the matter without the participation of the prosecuting agency. Additionally, docketing was believed to be 12necessary to make a fully informed sanction determination. After a thorough review of the facts and law in this matter, we find a fifteen-day suspension, without pay, and reimbursement of costs to be an appropriate sanction.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Except as relates to the question of whether Judge Best acted with actual bias or prejudice, the salient facts in this matter have either been jointly stipulated by the Office of Special Counsel (OSC) and by Judge Best, or admitted by Judge Best in testimony before the Commission.
This matter concerns Judge Best’s handling of a motion to terminate the probation of Antonio Garcia. In June 2009, based on having exchanged a series of lewd and lascivious texts and emails with a sixteen-year-old student at the school where Mr. Garcia taught, Mr. Garcia plead guilty to indecent behavior with a juvenile and was sentenced to five years of active supervised probation. Mr. Garcia’s prosecution was handled by the Attorney General’s office because the District Attorney’s office recused itself.
On May 17, 2011, a little less than two years into his five-year probation, Mr. Garcia, without the assistance of an attorney, filed a motion to terminate probation. The Attorney General’s office did not receive a copy of the motion. The motion to terminate probation did not include an order or rule to show cause by which the matter could be set for hearing.
At some point after Mr. Garcia’s sentencing, Judge Best had become personally acquainted with Mr. Garcia through their mutual involvement with the church they both attend, as well as through Judge Best’s work as the director of the church choir and Mr. Garcia’s membership in the choir. When Mr. Garcia filed his motion to terminate probation, Judge Best told *462 him, outside of court and through their social | .^connection, that he had received the motion and that it could not be set for hearing without an order to that effect. Judge Best told Mr..Garcia that he should seek legal advice and then provided him with the names of several attorneys who could possibly assist him, including the name of David Marquette, an attorney with whom Judge Best shared a close social relationship.
After receiving the motion filed by Mr. Garcia, Judge Best engaged in ex parte communications with Mr. Garcia’s probation officer concerning the merits of the motion that were designed to influence his judicial action. Judge Best asked the probation officer to contact the victim’s family to find out the family’s position regarding the proposed early termination of Mr. Garcia’s probation. When the probation officer informed Judge'Best of the opposition expressed by the victim’s father, Judge Best asked the probation officer to locate the victim, who was now an adult. Judge Best also discussed the merits of Mr. Garcia’s motion with the District Attorney and with the Livonia Chief of Police.
On December 15, 2011, Mr. Marquette enrolled as Mr. Garcia’s counsel and moved to have the matter set for a hearing. Judge Best signed the order and set the hearing for January 6, 2012. Judge Best also ordered the clerk of court to subpoena the probation officer to appear at the hearing. On January 6, 2012, after Judge Best finished his drug court docket, Mr. Garcia’s- case was called for hearing. At that time, the District Attorney’s office informed Judge Best that it had recused itself from prosecuting the case and that the Attorney General’s office had not been served with the motions filed by Mr. Garcia or his counsel, nor had it been notified of the hearing date.
Louisiana C.Cr.P. art. 822 requires the court to conduct a contradictory hearing before deciding whether to terminate probation. Thus, the hearing on Mr. Garcia’s | ¿motion to terminate his probation should have been a contradictory hearing. Despite Judge Best’s knowledge that the proper prosecuting agency did not receive Mr. Garcia’s motion or notice of the hearing date and was not present, and despite the Assistant District Attorney’s expressed intention not to participate in any meaningful or substantive way, Judge Best proceeded with the hearing.
Judge Best announced that the Assistant District Attorney would remain in court and “be a Court-watcher for the AG.’s Office.” The Assistant District Attorney agreed to be a “Court-watcher,” but stated, “I’m going to remain silent.” Asked later by the Judiciary Commission what he meant by the term “Court-watcher,” Judge Best stated, “I don’t know. I made that up. I — that just came out of my mouth.”
During the hearing, Judge Best: (1) questioned the probation officer regarding the opinions of others concerning the early termination of Mr. Garcia’s probation; (2) stated that the father of the victim was “indifferent” towards the proceedings even though the probation officer’s unrebutted testimony was that the victim’s father opposed the early termination of Mr. Garcia’s probation; and (3) made statements concerning his own personal observations of Mr. Garcia’s character gained through his interaction with Mr. Garcia at church and further indicated that those personal and out-of-court observations provided some basis for terminating Mr. Garcia’s probation early. At the conclusion of the January 6, 2012 hearing, Judge Best issued an order terminating Mr. .Garcia’s probation.
|5On January 23, 2012, a media outlet published a news- article about the early *463 termination of Mr. Garcia’s probation. The same day, Judge Best granted a “Motion to Set Aside the Early Termination of Probation” filed by the Attorney General’s office, reinstating Mr. Garcia to supervised probation. .
On January 26, 2012, by phone and a follow-up letter, Judge Best self-reported to the OSC the fact of his rulings in Mr. Garcia’s case. In his letter, Judge Best included transcripts from Mr., Garcia’s hearing. The OSC posed written inquiries and authorized an investigation, with which Judge Best cooperated.
In August 2014, the Commission filed a Formal Charge against Judge Best, alleging that his judicial actions and ruling in the Garcia case were motivated by his bias and/or prejudice in favor of Mr. Garcia and were influenced by his personal relationships. Alternatively, the Commission alleged that Judge Best’s words and conduct gave the appearance of bias.
In its Formal Charge, the Commission alleged that Judge Best’s conduct violated the following provisions of 'the Louisiana Code of Judicial Conduct: Canon 1 (a judge “shall personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved”), Canon 2 A (a, “judge shall respect and comply with the law and shall act at all times in a manner.that promotes public confidence in the integrity, and impartiality of the judiciary”), Canon 2 B (a “judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgments a] judge shall not lend the prestige of the judicial office to advance the private interest of the judge or others; nor shall á judge convey or permit others to convey the impression that they are in a special position to influence the judge”), Canon 3 A(l) (a “judge shall be faithful to the law and maintain professional competence in it; a judge •shall be unswayed by partisan interests, public clamor, or ,fear of criticism”), Canon 3 A(4) (a “judge shall perform judicial duties without bias or prejudice[; a] judge shall not, in the ■ performance of judicial duties, by words or'Conduct manifest bias or prejudice”), and Canon 3 A(6) (“[ejxcept as permitted by law, a judge shall not permit private or ex parte interviews, arguments |flor; communications designed to influence-his or'her judicial action in any case”). The Commission further alleged that Judge Best engaged in willful misconduct relating to his official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute, in violation of La. Const, art. V, § 25(C). .
Judge Best answered the Formal Charge and largely admitted its factual allegations. While he denied that his judicial actions and ruling were motivated by actual bias in favor of Mr. Garcia, Judge Best admitted his words and conduct gáve the appearance of bias. On December 15, 2014, Judge Best and the OSC jointly filed a “Statement of Stipulated Uncontested Material Facts and Stipulated Conclusions of. Law.” The stipulation incorporated the underlying facts set forth above as well as Judge Best’s .response to the Formal Charge. Based on these stipulated facts, the parties agreed that Judge Best violated the Code of Judicial Conduct as alleged in the Formal Charge. Judge Best did not stipulate that he violated La. Const, art. V, § 25(C). In their stipulation, Judge Best and the OSC did not agree to what would be an appropriate disciplinary sanction.
The Commission accepted the parties’ stipulations of fact, but initially declined to dispense with a hearing on the ground that a factual issue remainéd as to the issue of whether Judge Best was motivated by actual bias or prejudice. Although Judge *464 Best had stipulated to violating the Code of Judicial Conduct as alleged in the Formal Charge, the Formal Charge contained alternative allegations regarding bias or prejudice (either Judge Best acted with actual bias or prejudice, or alternatively, his “words and conduct gave the appearance” of bias or prejudice). After the parties filed a joint motion for reconsideration of the Commission’s ruling, the Commission agreed to dispense with the services of a hearing officer; however, the Commission preserved the right to find additional facts based on the record, including facts relating to the issue of actual bias.
The Commission deferred making a decision on whether to accept the stipulated conclusions of law pending further proceedings. The Commission accepted the stipulations of law, in part, after calling Judge Best to appear before the Commission. During his appearance before the Commission, Judge Best denied being friends with Mr. Garcia. Describing his relationship with Mr. Garcia, Judge Best testified that he knew Mr. Garcia simply as an “acquaintance” and “a choir member” from attending a local church.
Judge Best addressed his communication with Mr. Garcia’s parole officer. According to Judge Best, judges and parole officers routinely communicate in his judicial district. Although Mr. Garcia had already filed his motion to terminate probation at this time, Judge Best admitted he was “not thinking of the fine line of when a motion is filed,” and that because Mr. Garcia’s motion invoked a court proceeding, Judge Best should not have “asked [the probation officer] how Mr. Garcia was doing.”
Judge Best also explained his discussion with the Livonia Chief of Police as occurring during the course of an unrelated conversation. Similarly, Judge Best and the District Attorney are friends and, during a casual conversation, Judge Best sought the District Attorney’s impressions regarding Mr. Garcia’s request to terminate probation.
The Commission sought Judge Best’s reasons for proceeding with a hearing without a representative from the Attorney General’s office being present. Judge Best explained that he usually conducts the questioning, and his mindset was oriented with the typical probation hearing in which the District Attorney’s office (rather than the | ^Attorney General’s office) is the prosecuting authority. Traditionally, in his court, the District Attorney “plays no part” once a probation matter has been brought for hearing. Judge Best therefore heavily relied, just as he did for other probation cases, on the testimony of the probation officer. Judge Best testified he did not rely on his own observations of Mr. Garcia, and Judge Best regretted that he remarked from the bench about his own observations of Mr. Garcia formed only from church and the choir.
Also during the Commission’s hearing, Judge Best was asked why he indicated the victim’s father was “indifferent” to the probationer’s motion to terminate probation. Judge Best indicated it was a poor word choice and that what was on his mind was that the father referred the probation officer to the victim herself, who was no longer a minor, to determine if the victim objected.
Finally, during his appearance before the Commission, Judge Best apologized for his misconduct and expressed regret for his actions. He also described corrective measures he has already taken to avoid similar issues in the future.
Considering the stipulations and its own factfinding from its hearing, the Commission concluded that Judge Best violated *465 Canons 1, 2(A), 2(B), 3(A)(1), 3(A)(4), and 3(A)(6) of the Code of Judicial Conduct. Regarding the violation of Canon 3(A)(4), the Commission found that Judge Best did not act with actual bias or prejudice.[1] Additionally, the Commission found that even if Judge Best did not intend to violate the Code of Judicial Conduct or the Louisiana Constitution, his actions were, nevertheless, intentional. The Commission, therefore, determined Judge Best had 19engaged in willful misconduct relating to his official duty, in violation of La. Const, art. V, § 25(C). However, the Commission, did not find that Judge Best, engaged in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute , in violation of La. Const, art. V, § 25(C) because it found Judge Best’s conduct was not “persistent.” The conduct was limited to his handling of the motion to terminate Mr. Garcia’s probation.
As noted earlier, Judge Best did not contest the recommendation and, along with the Commission, filed a joint motion urging this court to accept and implement the recommendation as a consent discipline. This court rejected the joint motion and docketed the case for a full evaluation of the record.
DISCUSSION
This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const, art.- V, § 25(C).[2] This court makes determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re Quirk, 97-1143, pp. 3-4 (La.12/12/97), 705 So.2d 172, 176. In addition to the substantive grounds for disciplinary action listed in the Louisiana Constitution, this court, in accordance with its supervisory authority over all lower courts, has adopted the Code of Judicial Conduct, which is binding on all judges and violations of the Canons contained therein may serve as a basis for the disciplinary action provided for by La. Const, art. V, § 25(C). In re Quirk, 97-1143 at 4, 705 So.2d at 176.
|1flIn the instant matter, Judge Best stipulated that he violated Canons-1, 2(A), 2(B), 3(A)(1), 3(A)(4), and 3A(6) of the Code of Judicial Conduct. The Commission accepted these stipulations and, after considering Judge Best’s testimony, the Commission additionally found that Judge Best violated La. Const, art. V, § 25(C). The Committee explained that Judge Best did not intend to directly violate La. Const, art. V, § 25(C), but, because Judge Best acted willfully in his handling of the Garcia case, his misconduct nevertheless amounted to “willful misconduct relating to his official duty” under La. Const, art. V, *466 § 25(C). As noted previously, the Commission determined that regarding the violation of Canon 3(A)(4), Judge Best did not act with actual bias or prejudice.
Having reviewed the record, we agree with the stipulations and the Commission’s findings for the following reasons.
As Judge Best belatedly realized, once Mr. Garcia filed a motion to terminate probation, Judge Best was obligated to refrain from ex parte communications designed to influence his action in the Garcia case. See Canon 3(A)(6). Judge Best mishandled the actual probation termination hearing at- several junctures, most notably the initial juncture, Once Judge Best learned that the Attorney General’s office rather than the District Attorney’s office was the prosecuting agency, Judge Best should not have proceeded with the scheduled hearing given the absence of notice to the' Attorney General’s office. See Canon 3(A)(1).
Given his acquaintance with Mr, Garcia from a church choir, Judge Best’s remarks from the bench about his observations of Mr, Garcia called into question whether Judge Best terminated Mr. Garcia’s probation because Mr.-Garcia enjoyed a special position of influence. See Canon 2(B). However, the record establishes that Mr. Garcia was merely a casual acquaintance, and we find no clear and convincing Inevidence that Judge Best acted in the Garcia case with actual bias or prejudice. The record reflects .there was objective support for Judge Best’s ruling, inasmuch as the probation officer testified Mr. Garcia had “completed every general aspect or condition of his probation,” and a psychologist opined that Mr. Garcia “completed the sex offender curriculum” and was a “low risk to the community.”
We hasten to reiterate, however, that Judge Best mishandled the Garcia hearing. As Judge Best acknowledged, the hearing should not have proceeded in the absence of the Attorney General’s office and Judge Best’s remarks about his personal observations of Mr. Garcia had no proper place in what should have been a contradictory hearing. This mishandling-espécially in the context of Judge Best’s acquaintance with Mr. Garcia-not only created' an appearance of bias or prejudice in violation of Canon 3(A)(4), but also created an appearance of impropriety and undermined confidence in the integrity and impartiality of the judiciary in violation of Canon 2(A).
Viewed globally, Judge Best’s lapses in legal and ethical judgment fell below the standards required of a judicial officer. See La. Const, art. V, § 25(C); see also Canons 1 and 3(A)(1).
Having found Judge Best committed misconduct, we must decide the appropriate discipline. This court has identified a non-exclusive list of factors to be considered when imposing discipline on a judge. See In re Chaisson, 549 So.2d 259, 266 (La.1989).[3] Utilizing these factors, the *467 Commission determined the misconduct |12was serious, but was an isolated instance related to the handling of one motion. Judge Best acknowledged his misconduct and the Commission found him sincere in expressing remorse.[4] The Commission emphasized that Judge Best self-reported the Garcia incident to OSC, he cooperated, with the ensuing investigation, and stipulated to violations of the Code of Judicial Conduct.[5] Judge Best described to the Commission steps that he has taken to avoid similar misconduct. Having seen and heard all the evidence, including Judge Best’s testimony, the Commission determined that - “[t]here is no evidence that Judge Best used his position to satisfy his personal desires in this matter.”
The Commission viewed Judge Best’s actions as having harmed the integrity and respect for the judiciary. The Commission noted that Judge Best acknowledged as much in his brief to the Commission: “Judge Best recognizes that his misconduct received media attention and placed the judiciary as a whole in a negative light,” We likewise concur with this assessment. However, we also note, as did the Commission, that several respected community members testified that Judge Best has “integrity, |1shigh moral character, and excellent reputation in his community, both as a judge and as an individual.” The record also reflects that for approximately ten years now, - Judge Best has taken on additional responsibilities with the drug court-program. Thus, while we agree that his lapses in judgment in the Garcia matter have cast the judiciary in a negative, light, the record also gives us cause for optimism. Judge Best is capable of again promoting for the judiciary the respect he has earned for himself while in office. Judge Best has unswervingly indicated that he has and will continue to learn from -this incident, which is consistent with the testimony of his character.[6]
Like the Commission, we find Judge Best’s misconduct was an isolated event, but was nevertheless serious. Also serious were the Judge’s positive steps in response. Judge Best vacated the probation revocation order. Moreover, Judge Best’s prompt self-reporting, his cooperation, and the remedial measures he has undertaken to prevent additional misconduct are sig *468 nificant in determining appropriate discipline. We also agree with the Commission that there is no evidence Judge Best exploited his position as a judge to satisfy any personal desires. Where we differ from the Commission is in our evaluation of Judge Best’s disciplinary record; however, we perceive the difference between our evaluation and that of the Commission to be only slight.
| uWhen recommending that Judge Best should be suspended for thirty days, the Commission significantly premised its recommendation on the fact that this court previously has publicly censured Judge Best. In In re Best, 98-0122, pp. 2-3, 9 (La.10/20/98), 719 So.2d 432, 433-34, this court censured Judge Best for misconduct in several matters: commenting to a reporter about pending cases; using a “straw poll” of a courtroom audience in a misdemeanor bench trial; and grabbing and publicly chastising a juvenile who had displayed belligerence and disrespect during a hearing. However, that misconduct occurred approximately twenty years ago, when Judge Best was a relatively inexperienced judge.[7] See In re Free, 14-1828, p. 23 (La.12/9/14), 158 So.3d 771, 784-85 (noting that elapse of “over ten years” from prior discipline imposed by this court was appropriate to consider when weighing the Chaisson factor of prior ethical complaints). More recently, as the Commission noted, the Commission issued several admonishments and cautions to Judge Best. We find the actions by Judge Best, which prompted the Commission to issue those admonishments and cautions, were not analogous to the misconduct in the instant case.[8] Categorically, therefore, the prior disciplinary matters are either for a lesser type of conduct and markedly distinguishable from the instant case or for conduct which occurred long before the conduct at issue here.
While not diminishing the seriousness of receiving prior admonishments and cautions or of receiving discipline from this court, we do not ascribe the same heft to Judge Best’s disciplinary record as did the Commission. On the other hand, while we | ^favorably view (and have accounted for) Judge Best’s self-reporting, cooperation, remedial efforts, and contrition, we do not find the underlying misconduct so slight as to merit only another public censure, such as Judge Best proposes in his brief to this court. As we have previously held, the primary purpose of the Code of Judicial Conduct is the protection of the public rather than to simply discipline judges. In re Marullo, 96-2222, p. 6 (La.4/8/97), 692 So.2d 1019, 1023. Whereas the Commission recommended a thirty-day suspension, we believe the purpose of judicial discipline is well served by suspending Judge Best for fifteen days.
DECREE
For the reasons assigned, it is ordered that Judge James J. Best be suspended from office without pay for fifteen days. It is further ordered that Judge James J. Best reimburse the Judiciary Commission of Louisiana $1,610.71 in costs.
JOHNSON, Chief Justice, concurs in part and dissents in part.
*469 GUIDRY, Justice, concurs in part and dissents in part for the reasons assigned by Chief Justice Johnson.
CRICHTON, Justice, additionally concurs and assigns reasons.

. Canon 3(A)(4) provides, in pertinent part: “A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice[.j” The Commission found that Judge Best did not violate the first sentence just quoted inasmuch as his actions were not motivated by actual bias or prejudice. However, the Commission determined Judge Best violated the second sentence because it found "Judge Best manifested bias and prejudice by his words and conduct ...”

. La. Const, art. V, § 25(C) provides, in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure, to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.

. As identified in Chaisson, the non-exclusive list of factors to be considered by a court in imposing discipline on a judge are;
(a) whether the misconduct is an isolated, instance or evidenced a páttern of conduct; (b) the nature, extent and frequency of occurrence of the acts of- misconduct; (c) whether the misconduct-occurred in or out of the -courtroom; (d) whether the misconduct occurred in the judge’s official capadty or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the *467 extent to which the judge exploited his position to satisfy his personal desires.

. Judge Best gave a statement at the conclusion of the Commission’s hearing. Although too detailed to reproduce in, this opinion, these points encapsulate his self-evaluation:
I’m truly ashamed and embarrassed that I should find myself here today. Most importantly, I stand accountable for my failure to uphold the integrity of our great institution, the Louisiana Judiciary.
[O]nce I had the opportunity to reflect upon the facts and circumstances, it became very clear that I had. fallen below the standard of ethical, responsibility imposed upon me _

. Despite the cooperation of Judge Best, despite the fact he self-reported within a matter of days on January 26, 2012, and despite a joint motion to dispense with the services of a hearing officer, the first order setting the matter for hearing was not issued until March 3, 2015. The Commission rescheduled the hearing .eight, days later, and the matter finally proceeded to a hearing on May 22, 2015.

.Reflecting both an= acknowledgment of his misconduct and a commitment- to corrective measures, Judge Best testified:
As I preach to my drug court clients,, when you are wrong, admit it after which there are three things you can do. You can stay the same. And if it’s bad, it stays bad. You can make it worse. And thirdly, you can take advantage of your circumstances and make improvements. Adversity surrounds us. And if we learn from it, adversity can make you better and.it can make us stronger,
[[Image here]]
I don’t want to be here. But as I stand before you,- I can honestly say that I am a better person, a better judge....

. Judge Best was elected as a judge on April 3, 1993.

. ' For example, in the most recent matter, Commission File No. 11-8286, Judge Best was cautioned for signing a transport order, directing an inmate to be brought to court. Judge Best had been recused from the inmate’s case when he signed the transport order. In issuing the cautionary letter, the Commission did not dispute Judge Best’s explanation that he overlooked the defendant's name on the transport order, which he signed when serving as a duty judge.