WEIMER, J.,
concurring in part and dissenting in part.
h This entire matter is disappointing on many levels-beginning with the implementation of the supplemental benefits program, through the Judiciary Commission[1] evaluation of the judges’ participation in the program in 1994, and ending with the lack of contemporary follow-up by the then Judicial Council[2] at the time the program was initially uncovered. The presiding hearing officer, retired Judge Ward Fonte-not, referred to this matter as having a “somewhat troubling” history. The current Judiciary Commission described the program as creating the public impression of the “pilfering [of] court funds” at the expense of the public. Judiciary Commission’s Findings of Fact, Conclusions of Law, and Recommendation of Discipline, Case No. 0345, p. 38.
laPublic officials are elected to serve, not to be served by taking advantage of the public fisc. Those who created the so-called employee benefits system for the Orleans Parish Criminal Court are not presently before this court. However, Judge Derbig-ny, who was lured into the system as a new judge, must now account for his own role. Whether others who may or may not be more culpable than Judge Derbigny will be brought before this court is for the Judiciary Commission to decide. See La. Const. art. V, § 25(C); see also Small v. Guste, 383 So.2d 1011, 1013 (La. 1980) (ruling that this court’s disciplinary authority over judges may be initiated “solely by exercise of this Court’s exclusive original jurisdiction on Judiciary Commission recommendation.”). Obviously, each matter must be decided on its own facts.
Judge Derbigny’s role, initially, like that of virtually every employee new to a job, involved the mere signing of benefits forms presented to him. In his initial role, Judge Derbigny no doubt perfunctorily relied on those who preceded him and those responsible for administration of the benefits system. Robert Kazik, the Judicial Administrator since 2006, testified when the new judges “showed up, we gave them a packet and said fill this out, it’s your new-hire paperwork ... just like any other employee.” Mr. Kazik’s predecessor, Elizabeth Stogner, testified she would enroll the judges in the supplemental benefits program, including dental, vision, life insurance, and Exec-U-Care. When asked whether all of the judges availed themselves of all available policies, Ms. Stogner replied that the judges signed up for “all *1054 policies” unless a particular judge was not eligible for a certain policy for health reasons.
However, Judge Derbigny continued to add and accept suppleméntal benefits throughout his tenure on the bench 'until 2011, which was proximate in time to an ¡¡¡audit of the benefits system conducted by the Louisiana Legislative Auditor. A majority of this court now finds that Judge Derbigny committed no judicial misconduct in his continued utilization of the benefits system. I respectfully disagree.
There were several types of insurance policies that Judge Derbigny obtained. Some were whole life insurance policies, with a cash surrender value, which were essentially the same policies as those.investigated by the Judiciary Commission in 1994 and found at that time .to have been inconsistent with La. R.S. 13:691. The mar jority does not find misconduct in Judge Derbigny’s continued procurement of the whole life policies, essentially because the Judiciary Commission found no judicial misconduct in 1994 for procuring whole life policies. At the time, the Judiciary Commission explained that, while it found no judicial misconduct, the practice of buying whole life insurance policies “may violate the original intent of the judicial salary parity statute, La. R.S. 13:691.” See August 25, 1994 letter of the Office of Special Counsel for the Judiciary Commission (p. 3971 of the record of these proceedings).
I accept Judge Derbigny’s representations that he was unaware of the Judiciary Commission’s opinion from 1994. However, his unawareness of the 1994 opinion does not relieve Judge Derbigny from knowing the law. Citizens without training in the law are not excused from not knowing the law. See La. C.C. art. 5 (“No one may avail himself of ignorance of the law.”). Judge Derbigny is a judicial officer and has extensive training in the law. Other court employees who were not judges could not obtain the- whole life insurance policies on the same favorable payment terms as did Judge Derbigny. Moreover, Judge Derbig-ny could have eventually personally bene-fitted from policies paid for with public funds'when the policies Lreaehed a maturity date -or were surrendered. His conduct in obtaining the whole life insurance policies, therefore, violated La. R.S. 13:691(A) and (B)(3).[3] Such a violation of statutory law by a judge, in the course of his official duties, amounts to' ethical misconduct. See In re Lemoine, 96-2116, p. 2 (La. 4/4/97), 692 So.2d 358, 359 (on reh’g).[4]
A similar analysis applies to the other so-called employee benefits at issue, inasmuch as they were not authorized by statute. The majority of this court concedes that the Exec-U-Care program is not insurance authorized by La. R.S. 13:691 and, consequently, the majority “order[s] Judge Derbigny to reimburse the JEF $10,002.58 in out-of-pocket reimbursements to Judge *1055 Derbigny.” In re Derbigny, 16-0921, (La. 1/20/17), 219 So.Sd 1041, 1052.
As the Judiciary Commission correctly indicates, the Exec-U-Care product “is not insurance. .., Under the Exec-U-Care program, ... the Criminal Court [Judicial Expense Fund] paid not only for premiums on Judge Derbigny’s behalf but also paid for the actual amounts Judge Derbigny was reimbursed” for out-of-pocket expenses such as medical co-pays. Judiciary Commission’s Findings of Fact, Conclusions of Law, and Recommendation of Discipline, Case No. 0345, p. 31 n.42'. True insurance involves a risk to the underwriter, but this was nothing more than a Uruse—masquerading as insurance—to reimburse the judges’ out-of-pocket expenses not covered by the judges’ true insurance coverages. Furthermore, because .the Exec-U-Care program charged “administrative fees” for paying Judge Derbigny’s out-of-pocket expenses, the Judicial Expense Fund was actually paying more than if it had paid Judge Derbigny’s expenses directly. This program was not available to other court employees who were not judges.
Given the manner in which La. R.S. 13:691 addresses benefits to judges, it has been described in this litigation as “the judicial salary parity statute.”[5] In that regard, the statute prohibits judges from receiving benefits not made available to other employees and requires judges to pay the same as non-judges for the benefits judges receive. See La. R.S, 13:691(A) and (B)(3). The Exec-U-Care program violated both principles. Because Judge Der-bigny violated statutory law in accessing the Exec-U-Care program, he has committed ethical misconduct. See In re Lemoine, 96-2116 at 2, 692 So.2d at 359 (on rehg).
In ' my view, ' the determination that Judge Derbigny violated statutory law,[6] but did not engage in ethical misconduct departs from the well-established proposition that a judge’s significant violation of statutory law in the course of his official duties amounts to ethical misconduct (see id.), as well as the jurisdictional | ^principles enshrined in the Louisiana Constitution. This matter is solely before this court because the Judiciary Commission has, recommended that Judge Derbig-ny be disciplined for misconduct. See La. Const, art. V, § 25(C) (“On recommendation of the judiciary commission, the supreme court may censure, suspend ,.., remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice .... ”). Once there is a finding, of no ethical, misconduct, in my view, there is no jurisdiction under. La. Const, art. V, § 25(C), and the court is powerless to order reimbursement to the Judicial Expense Fund. See Id.; compare In re Granier, 04-3031, p. 4 (La. 6/29/05), 906 So.2d 417, 420. Cited by the majority to support the proposition that this court *1056 may order reimbursement,[7] in In re Granier this court publicly censured a judge for ethical misconduct and “further ordered that [the] Judge ... reimburse the Judicial Expense Fund of the 29th Judicial District Court $2,321.78.” In re Granier, 04-3031 at 4, 906 So.2d at 420 (emphasis added). Stated simply, in the absence of ethical misconduct, there can be no order of reimbursement because, in the absence of ethical violation, this court lacks jurisdiction to impose an order of restitution. Yet, full reimbursement to the public fisc is absolutely necessary in this matter.
Ordering reimbursement for the sake of making the public fisc whole is only one reason why it is so important to properly evaluate ethical misconduct on the part of Judge Derbigny. It is well-established that the primary purpose of the Code of Judicial Conduct is the protection of the public rather than to simply discipline judges. In re Best, 15-2096, p. 15 (La. 6/29/16), 195 So.3d 460, 468 (citing In re Marullo, 96-2222, p. 6 (La. 4/8/97), 692 So.2d 1019, 1023). A significant matter of public concern is the protection of the- public fisc, as indicated by La. R.S. 13:691. See n.3, supra, quoting from La. R.S. 13:691(A) and (B)(3).
The Office, of Special Counsel (the OSC), in my view, has clearly and convincingly established that Judge Derbigny violated La. R.S. 13:691 regarding other so-called employee benefits as found by the Judiciary Commission. The record reflects that other court employees, who were not judges, could not access the supplemental insurance policies in the same large quantities and, hence, did not have benefits paid “at the same rate” as did Judge Der-bigny. See La. R.S. 13:691(A) and (B)(3). The opinion tacitly concedes Judge Der-bigny did not comply with the requirement for parity of benefits with non-judges set forth in La. R.S. 13:691, inasmuch as it finds Judge Derbigny selected supplemental insurance policies that were “duplica-tive.” In re Derbigny, 16-0921, 219 So.3d at 1046. A recognition that Judge Derbig-ny accessed duplicative coverage undermines finding that the OSC has made no showing tlqat the insurance premiums attributed to Judge Derbigny exceeded those of any other judges or state employees. Under La. R.S. 13:691(A) and (B)(3), the questions to be answered are whether Judge Derbigny accessed benefits lawfully available to others and whether he accessed benefits at the same costs as non-judges. Because he accessed benefits that were “duplicative,” Judge Derbigny accessed benefits that were not lawfully available to others, or to himself; therefore, the costs for those benefits exceeded what others lawfully could impose on the public fisc.
Relatedly, I find the burden of proof placed on the OSC regarding the supplemental insurances is confounding, if not insurmountable. It should not be the task of the OSC to ascertain whether other employees, judges or non-judges, are | ^unlawfully selecting more benefits than they are entitled to select. Implicit in finding there was “no showing” regarding others’ selection of benefits is that if anyone else is selecting unauthorized or “duplica-tive” coverage, then no one has committed misconduct. Once the OSC established that Judge Derbigny was in violation of statutory law regarding insurance, it became his burden to establish any justification for taking advantage of the multiple policies.
This matter does not involve a failure by the Judiciary Commission to sustain its burden of proof. The most salient and relevant facts are not at issue. Rather this matter involves a determination of what law is to be applied to the facts and a determination of the appropriate sanction and amount of restitution. Those determi *1057 nations are wholly within this court’s jurisdiction.
Before discussing the appropriate sanction, I sum up my views on the conduct at issue and on the consequences for that conduct. I agree with the majority that Judge Derbigny should reimburse the Judicial Expense Fund for the out-of-pocket reimbursements under the Exec-U-Care program. However, I find that accessing the program was itself a violation of La. R.S. 13:691, and amounted to ethical misconduct. I would, therefore, require Judge Derbigny to also reimburse the Judicial Expense Fund for the amount spent for Judge Derbigny to participate in the Exec-U-Care program, which is the amount of reimbursement found by the Judiciary Commission. Furthermore, I would remand to the Judiciary Commission for a determination of the premiums paid by the Judicial Expense Fund for supplemental insurance policies that were in excess of what is permitted by La. R.S. 13:691, and I would order Judge Derbigny to refund the premiums paid on unauthorized policies. I would exclude from that litany of policies those that Judge 'Derbig-ny accessed when |9he initially became a judge, except regarding any life insurance policies which are not authorized by La. R.S. 13:691.
Turning then to the sanction, I note that Judge Derbigny has previously received an admonishment from the Judiciary Commission for the late filing of a campaign finance report and the late payment of the related $2,500 fine. While I accept Judge Derbigny’s representation that he was unaware he was committing any misconduct in the present case, his lack of intent to commit misconduct is no excuse. See, e.g., In re Justice of the Peace Alfonso, 07-0120, p. 7 (La. 5/22/07), 957 So.2d 121, 125 (“An act need not be intentional to support judicial discipline.”). Finding some similarity between the conduct for which Judge Derbigny was previously admonished and the present misconduct—inasmuch as then and now Judge Derbigny has failed to fully inform- himself and to responsibly discharge the administrative requirements attendant with holding judicial office—I believe that some period of actual suspension from judicial office is appropriate for these repetitive instances of misconduct. See, e.g., In re Free, 14-1828, p. 23 (La. 12/9/14), 158 So.3d 771, 784-85 (prior judicial discipline was appropriate to consider when imposing a suspension). At a bare minimum, the sanction of public censure recommended by the Judiciary Commission should be imposed.
I also agree with the Judiciary Commission’s evaluation of mitigating factors. As summarized by the majority, Judge Der-bigny’s “conduct was significantly mitigated by the inaction of the Judicial [Counsel] and others who failed to properly advise the Criminal District Court judges about the legality of the supplemental benefits program.” In re Derbigny, 16-0921, 219 So.3d at 1047. Moreover, “[t]he Commission agreed with Judge Derbigny that his level of culpability ... is greatly diminished by his lack of guidance from the judicial branch and by the actions of his 11(lpredecessors.” Id., 16-0921 at 16. I reiterate, however, that these are mitigating, not exculpatory factors.
I am not at all pressed to discern the reason for the Commission’s reversal of its position in 1994. The Commission clearly determined that its 1994 opinion “that the judges had not engaged in any judicial misconduct by participating in the supplemental benefits program” was wrong and has presently corrected its stance.[8] Even *1058 then, the Judiciary Commission “expressed its strong concern that this practice. [of accessing the Criminal District Court Judicial Expense Fund] may violate the original intent of the judicial salary parity statute.” Thus, confronted in the present with misconduct that is significantly mitigated by a lack of administrative guidance, but is also aggravated by being related to Judge Derbigny’s prior misconduct in administrative matters, I conclude that the suspension which should be imposed should be brief in duration.
As a final detail, I note that Louisiana Supreme Court Rule XXIII, § 22 provides for the recovery of costs incurred. Because it is Judge Derbigny’s misconduct which provoked these extensive proceedings, and because the judicial salary parity statute violated here is intended to protect the public fisc, I would require Judge Derbigr ny to pay the costs of the proceedings.
Accordingly, I respectfully concur • in part and dissent in part.[9]

. The [Judiciary] Commission consists of nine members ...: one court of appeal judge and two district judges ...; two attorneys admitted to the practice of law for at least ten years and one attorney admitted to the practice of law for at least three but not more than ten years ...; and three citizens, not lawyers, judges or public officials
[[Image here]]
http://www.lasc.org/la_judiciaLentities/ judiciary_commission.asp (last visited 12/12/16). Under La. Const, art. V, § 25(C), the Judiciary Commission initiates procedures for judicial discipline by recommendation to the Louisiana Supreme Court. In a typical case, the Judiciary Commission makes such recommendations after initiating investigations, hearings, and making its own factual and legal determinations. See generally JCL Rules VI, VII, VIII, and XI(C)(3)(b).

. "[T]he Judicial Council serves as a research arm for the Supreme Court. It often acts as a resource center where ideas for simplifying and expediting judicial procedures and/or correcting shortcomings in the system are studied.” http://www.Iasc.org/la_iudiciaL entities/iudiciaLcouncil.asp (last visited 12/12/16).

'. The referenced provisions of La. R.S. 13:691(A) and (B)(3) prohibit judges from receiving "any additional salary, compensation, emolument, or benefit” not authorized by law, and prohibit judges from benefitting from any "[pjayment of premiums for ... insurance programs” unless the payment is "at the same rate as those paid by other state employees.”

. In In re Lemoine, 96-2116 at 2, 692 So.2d at 359, this court ruled that a failure to re-cuse, when statutory grounds exist, was sanc-tionable misconduct. The court explained: A judge’s clear violation of a statute is misconduct, because it is a judge violating the law, and such disobedience or disrespect for the law, which his very oath commands that he .support, constitutes "willful misconduct relating to his official duty,” under Art. V, § 25(C) of the Constitution. Such a statutory violation would also constitute an ethical breach under Canon 2 of the Code of Judicial Conduct.

. The statute could also be referred to as a limitation on judicial compensation and benefits, in my view.

. As stated by the majority, "it is clear that acceptance of these particular benefits' is not authorized by La. R.S. 13:691." In re Derbigny, 16-0921, 219 So.3d at 1051, Although the majority limits this finding "going forward,” the language of the statute has not changed. Further, in a 1994 letter, the OSC advised that the Judiciary Commission "expressed its serious concern” that the purchase of any insurance through the judicial expense fund "may violate the original intent of the judicial salary parity statute, R.S. 13:691,” (Emphasis added.) The letter advised that life insurance with “cash surrender values” be "eliminated.” Thus, the/ "serious concern” raised by the Judiciary Commission was not limited to cash surrender policies. See record of these proceedings atp. 3971.

. See In re Derbigny, 16-0921, 219 So.3d at 1048 n.10,

. Commendably, in changing its course, the Commission has publicly taken the stance that it previously erred, and has staked a claim to the adage, that "two wrongs don’t •make a right.”

. Whether my analysis, which concurs with the determination of the Judiciary Commission that discipline and restitution are warranted, or the alternative analysis, which absolves the judge of discipline and the obligation to reimburse the public fisc, is the "troubling” or "patently false” or "border[ing] on outrageous” analysis will ultimately be judged by those who evaluate these respective opinions in light of the record facts.
Similarly, others can evaluate whether my analysis, or the analysis which departs from the Judiciary Commission's recommendation and does not sanction this judge on these facts, is "patently unfair,”