# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #049

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **25th day of October, 2024** are as follows:

**BY Crain, J.:**

2024-O-00976    *IN RE: JUDGE VERCELL FIFFIE FORTIETH JUDICIAL DISTRICT COURT ST. JOHN THE BAPTIST PARISH STATE OF LOUISIANA*

SUSPENSION IMPOSED. SEE OPINION.

Weimer, C.J., concurs in part and dissents in part and assigns reasons.
Hughes, J., dissents in part and assigns reasons.
Crichton, J., additionally concurs and assigns reasons.
McCallum, J., concurs and assigns reasons.
Griffin, J., dissents and assigns reasons.

IN RE: JUDGE VERCELL FIFFIE
FORTIETH JUDICIAL DISTRICT COURT
ST. JOHN THE BAPTIST PARISH
STATE OF LOUISIANA

Judiciary Commission of Louisiana

**CRAIN, J.**[*]

This matter is before the court on the recommendation of the Judiciary Commission of Louisiana. The Commission found that Judge Vercell Fiffie mishandled warrant requests, failed to comply with a clear order from an appellate court, recalled two bench warrants issued by another judge contrary to her request, and failed to cooperate with others in the justice system. We agree and find violations of Canons 1, 2, 2A, 3A(1), 3A(4), 3A(7), and 3B(1) of the Code of Judicial Conduct and Article V § 25(C) of the Louisiana Constitution. Thus, we impose discipline.

## FACTS AND PROCEDURAL HISTORY

Judge Fiffie became a judge effective January 1, 2021, in the Fortieth Judicial District Court, Division A, St. John the Baptist Parish. He has served continuously since then.

This investigation arises from complaints made by Judge Nghana Lewis and Sheriff Michael Tregre. The complaints concerned Judge Fiffie's handling of warrants. The Commission then expanded its investigation to include additional issues.

---

[*] Justice Jeannette Theriot Knoll, retired, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 3.

The Commission's Notice of Hearing alleged Judge Fiffie violated Canons 1, 2, 2A, 2B, 3A(1), 3A(4), 3A(7), and 3B(1) of the Code of Judicial Conduct and Article V § 25(C) of the Louisiana Constitution by: (1) engaging in a practice of asking or requiring law enforcement to seek consent before issuing a search warrant, which is not required by law and gives an appearance of bias against law enforcement or in favor of criminal suspects; (2) failing to take timely action on pending warrant requests; (3) failing to comply with Judge Lewis' request not to recall her bench warrants without first consulting her; (4) violating an appellate court order, which necessitated a second writ application and an order threatening contempt; (5) requesting that his name not be included in the Sheriff's database as the issuing judge on bond orders; and (6) displaying indifference and being uncooperative with other judges and the Sheriff's office after they made attempts to address his conduct or practices.

A hearing was held on September 25, 2023. After the hearing, proposed findings of fact and conclusions of law were submitted to the Commission. Judge Fiffie then appeared before the Commission on June 28, 2024. The Commission found by clear and convincing evidence that Judge Fiffie's actions with respect to his review of warrants, his failure to comply with a clear order of an appellate court, his recall of another judge's bench warrants, and his failure to cooperate with his judicial colleagues and the Sheriff's Office constitute misconduct. It found no misconduct relative to Judge Fiffie's request that his name not be included on bond orders. The Commission determined that the facts, along with its conclusions of law, supported discipline. It recommended that he be suspended for six months without pay, with three months deferred. The Commission also recommended two-years of probation during which Judge Fiffie must obtain additional education and regularly confer with a mentor judge.

2

Performing our constitutional function, we must review the Commission's findings of facts and conclusions of law and, if supported by the facts and law, impose discipline. The following facts were presented to the Commission:

**Warrant requests**

Case No. I22001329

An officer sought five search warrants related to the investigation of alleged carnal knowledge of a juvenile and juvenile pornography. The warrants sought to search certain cell phones and e-mail addresses. Judge Fiffie asked the presenting officer to first seek consent to search. The officer advised that she did not want to seek consent because it could jeopardize the investigation. Eleven days later, Judge Fiffie approved only one of the five search warrants, and took no action on the remaining four warrants. In the meantime, the juvenile, who had been hesitant to cooperate with the investigation, refused to cooperate. The suspect then left town on military assignment.

Case No. I21002507

An investigation began of possible cruelty to a non-verbal one-year-old in daycare, who suffered a femur fracture. The investigating officer submitted warrant applications for medical records from both the emergency room and the orthopedic specialist who treated the child. Judge Fiffie signed the warrant for the emergency room records, but refused the warrant for the orthopedic records. The requests were worded the same. In rejecting the warrant for orthopedic medical records, Judge Fiffie reasoned that the "charges appear unsupported by the facts." No charges were pending at the time. Judge Fiffie could not explain granting one warrant and not the other.

Case No. I21005961

An armed suspect was accused of aggravated assault during a domestic violence incident. The suspect was alleged to have retreated into a house with a

weapon. Officers on the scene requested a search warrant to enter the home, seize any weapons, and arrest the suspect (who also had an open arrest warrant). Judge Fiffie delayed signing the warrant, insisting the officers contact the property owner. Judge Fiffie initially denied the warrant because the officers were "[u]nable to identify the amount of persons in the home and homeowner," reasoning "[r]equirements of a no-knock warrant are higher." From the scene, the officers called Judge Lewis, who then called Judge Fiffie and told him to look just at the four corners of the warrant. After two hours delay, Judge Fiffie signed the warrant. During the delay, the neighborhood was shut down and people were evacuated from their homes.

Case No. I22005399

On September 16, 2022, a search warrant was sought for firearms allegedly used in crimes, along with items which an arrestee had confessed were taken during a burglary. The items sought were believed to be in the possession of a juvenile residing at the location. Judge Fiffie initially instructed the officer to ask the juvenile's mother for permission to search her son's room. Judge Fiffie ultimately signed the warrant on October 13, 2022, after viewing it eighteen times in that 28-day period.

Case No. I21003043

An investigation began involving an armed robbery and aggravated battery where the suspect was alleged to have posted a photograph of the involved weapon on social media. Judge Fiffie rejected the warrant, asking "[w]ould this warrant be better [served] on Instagram? Does the application on the phone maintain the information requested?" A second warrant was presented to search the cell phone and added:

> The Instagram application…would show calls that were made and received from the attached account. If this is confirmed Detective Barlow could and then would submit a search warrant for the account

4

attached to [juvenile's name redacted]. Detective Barlow is aware that in order to post a photo onto the Instagram application the photo must be taken from the camera of the phone being used. That photo could then be possibly stored in the camera roll application of the phone.

Despite the added information, Judge Fiffie refused the warrant, asking: "[d]oes the phone maintain the contact information? The warrant does not have any reference to the information being found on the phone." The Commission found that Judge Fiffie wanted confirmation that the evidence being sought was actually on the phone before signing the warrant to search the phone for that evidence.

### Case No. I21011476

A neighbor reported hearing gunshots from inside a home. Police viewed the neighbor's security camera, which revealed individuals in the home and what appeared to be gunfire. Police visited the home, and a juvenile answered the door, stated he was alone, then yelled inside to hide from the police. Police entered the home, citing a reasonable fear of an injured person inside, and observed a pistol in plain view. The mother of the juvenile later arrived and would not consent to a search of the home without a warrant. A warrant was sought to search the home for weapons to support a charge of illegal use of weapons by a juvenile. Judge Fiffie denied the search warrant.

### Case No. I23002156

Officers presented a warrant for the arrest of a juvenile who threatened a school shooting. The threats were overheard by another student. The suspect had also brought a gun to school and showed it to another student, who reported it to her parent. Witnesses confirmed that the suspect had a list of individuals he would shoot. An arrest warrant for "Terrorizing" was sought. Judge Fiffie refused the warrant. He debated whether there was a threat to the public and instructed the officers that the charge of "Menacing," a misdemeanor, was more appropriate. Judge Fiffie stated: "so lets see if we might can do it another way, because I think

5

the biggest concern is to–to pick him up, and the ultimate concern is not to create someone who is a criminal; is that correct?"  After the warrant was revised to allege "Menacing" as the crime, Judge Fiffie signed the misdemeanor warrant.

The Commission also investigated other delayed warrants where Judge Fiffie viewed warrants multiple times over the course of many days before either approving or taking no action on them.  In several of these situations, the warrant was transferred to another judge who signed it the same day.  Data showed Judge Fiffie rejected warrants at a much higher rate than his colleagues.  For example, in 2021 Judge Fiffie rejected 27% of warrants presented to him.  In contrast, Judge Snowdy rejected 0.24% of warrants and Judge Lewis rejected 2.4%.

The investigation also involved allegations that Judge Fiffie mishandled "48-hour" warrants.  Louisiana Code of Criminal Procedure article 230.2 requires an affidavit of probable cause be signed within 48 hours of a warrantless arrest.  Otherwise, the arrestee must be released from custody on his or her own recognizance.  The investigation revealed Judge Fiffie failed to review 48-hour warrants within 48-hours of the arrest.  This resulted in the warrant being denied and the arrestee being released without bond.  In other instances, Judge Fiffie rejected warrants near the end of the 48-hour period, requiring that the warrant be resubmitted.  He then did not review the resubmitted warrant within the 48-hour period, again resulting in its rejection and the release of the arrestee.  Judge Fiffie gave no specific explanation why he was unable to timely review the 48-hour warrants.

Judge Fiffie was given the opportunity to explain his conduct with respect to all of these warrants.  However, he was unable to provide specific details or explanations for his actions, instead answering with vague generalities.  When pressed, he could not clearly define "probable cause," which is the legal underpinning of any warrant.

6

**Failure to comply with an appellate court order**

In *State v. Lacordio Randy Joseph*, the defendant did not appear for court after being properly noticed. The state requested a bench warrant for his arrest. In response, Judge Fiffie asked whether the deputy who signed the notice to appear was actually an ex officio notary. The state could not confirm or deny the deputy's status, Judge Fiffie refused the bench warrant, and the state took writs.

In an unpublished opinion, the Fifth Circuit Court of Appeal ordered Judge Fiffie to issue the bench warrant within seven days, stating:

> Upon review of the writ application and the applicable law, we find that Sgt. V. Johnson was authorized to witness the execution of the bond as an ex officio notary public, and Defendant received proper notice by way of a validly executed bail undertaking document using St. John the Baptist Parish's pre-printed Appearance Bail Bond form. If the deputy/ex officio notary public was required to list his full name, badge number (in lieu of notary number), and the expiration date of his commission as an ex officio notary public, then the failure to do so were irregularities–which did not relieve Defendant of his undertaking to appear in court on the date noticed on the form, according to La. C.Cr.P. art. 328.

> While we note the trial judge's reasons for denying the State's motion, we find that the judge is constrained by the plain language of La. C.Cr.P. art. 333, which mandates the issuance of an arrest warrant for a defendant who received proper notice of the time fixed for his appearance but failed to appear in court as required.

Instead of issuing the bench warrant as ordered, Judge Fiffie continued to question the deputy's status. He refused to issue the warrant. The state filed a second writ, which the Fifth Circuit granted, stating:

> We find that the trial judge violated a lawful court order when he failed to issue an arrest warrant for defendant as ordered by this Court. As such, we order the trial judge to comply with this Court's previous order and issue an arrest warrant for defendant within five working days of the date of this disposition and to show and file proof with this Court's Clerk of Court that he complied. If the trial judge does not comply with this order, he is to show cause on August 3, 2022, at 1:30 p.m. why he should not be held in contempt of court.

Judge Fiffie defended his actions by explaining he was seeking clarification from the Fifth Circuit before issuing the warrant. However, Judge Fiffie never

contacted the appellate court for clarification. Despite the seriousness of this allegation, the Commission found Judge Fiffie unprepared to address it. He either misremembered or could not recall the Fifth Circuit's orders and did not appear to have reviewed the relevant documentation thoroughly enough to recall basic details.

**Recall of Judge Lewis' bench warrants**

Judge Fiffie recalled two bench warrants issued by his colleague, Judge Lewis, without first consulting her and despite prior requests that he not do so. On March 11, 2021, Judge Lewis sent Judge Fiffie an e-mail requesting compliance with her policy concerning recalling bench warrants issued from her division. Specifically, she said:

> I am respectfully requesting that no bench warrant that issued from Division B, or on a Division B assigned case, be recalled without conferring with me, until the Defendant pays the bench warrant bond, and/or until the Defendant is brought to court. I need to ensure uniformity of decision-making with respect to the circumstances and conditions under which warrants are issued and/or recalled . . ..

The issue was also discussed at an *en banc* meeting of the district judges.

On March 17, 2022, Judge Fiffie recalled a bench warrant issued by Judge Lewis in Case 2019-CR-125 and 2019-CR-2018 (*Rose*). Judge Lewis sent a second email on April 8, 2022, reiterating her policy regarding recalling bench warrants issued from her division.

By letter dated August 31, 2022, Judge Fiffie was notified that the Commission was investigating this issue. Twelve days later, he recalled a second bench warrant issued by Judge Lewis in Case 2022-MM-67057 (*Tamborella*). Tamborella's attorney requested that the bench warrant be addressed by Judge Fiffie, even though it was not on his docket. The state's attorney objected. Judge Fiffie asked if Judge Lewis' division had been contacted. After being told Judge Lewis was not at the courthouse, Judge Fiffie recalled the bench warrant. Judge Fiffie

8

could not answer why he did not text Judge Lewis, despite having her cell phone number.

## Lack of cooperation

Sheriff Tregre testified that when he attempted to talk to Judge Fiffie about his concerns regarding warrant requests, Judge Fiffie did not respond. Judge Fiffie also did not respond to email attempts to set up meetings. Sheriff Tregre testified that he explored other avenues to address Judge Fiffie's conduct before filing a complaint, including speaking with Judge Snowdy, Judge Fiffie's colleague on the Fortieth Judicial District Court, and Judge Pickett, Judge Fiffie's assigned mentor judge.

Judge Lewis testified there was a "deterioration of communication" with Judge Fiffie, such that it was not productive to raise issues with him. She observed he "is not receptive to a lot of feedback." She further testified there were multiple instances when Judge Fiffie did not respond after she attempted to address issues with him, and other times where such attempts fell "deafly on his ears."

Judge Snowdy testified that Judge Fiffie "goes by his own drummer," and had been "less than open" or "dismissive" of others' perspectives when issues were discussed. He observed it could be "difficult to nudge him off his mind set as I consider it."

Major Mangano testified that when he tried to address warrant issues with Judge Fiffie, they were "strange conversations, and they did get confrontational at times."

Major LeBlanc testified that when he tried to ask Judge Fiffie questions, it was a "constant fight"; trying to approach issues with Judge Fiffie was "an uphill battle" and "he doesn't really want to hear it."

At the Commission hearing, Commission members observed Judge Fiffie's resistance to feedback and questioning.

## DISCUSSION AND ANALYSIS

The Supreme Court has exclusive original jurisdiction in judicial discipline proceedings. La. Const. art. V § 25(C). The court has adopted the Code of Judicial Conduct, which supplements the constitutional grounds for disciplining judges. Before discipline can be imposed, charges against a judge must be proven by clear and convincing evidence. *In re Hunter*, 02-1975 (La. 8/19/02), 823 So.2d 325, 328. Applying this standard, we agree with the Commission's findings and conclusion that Judge Fiffie committed judicial misconduct.

### Warrant requests

Judge Fiffie failed to timely review and act on warrant requests, which delayed the investigations of alleged criminal conduct. He also engaged in a pattern of requiring law enforcement to seek consent to search before issuing a search warrant and requiring the inclusion of property ownership information in warrant requests. He cited *Steagald v. United States*, 451 U.S. 204 (1981) as support for these requirements. Specifically, Judge Fiffie believed *Steagald* and its progeny "require that when the search of a third persons' home is involved that the officers should first request authority to search from the homeowner, unless an exception is present."

*Steagald* does not support Judge Fiffie's actions. To the contrary, his actions reflect a lack of knowledge or misunderstanding of the law. The issue in *Steagald* was "whether, under the Fourth Amendment, a law enforcement officer may legally search for the subject of an arrest warrant in the home of a third party **without first obtaining a search warrant**." *Id*. at 205 (emphasis added). The court observed that a search warrant "is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police," and held that a search warrant must be obtained

10

absent exigent circumstances or consent. *Id.* at 213. Thus, *Steagald* does not require consent before a search warrant can issue. It only recognizes there is no need for a search warrant if consent is obtained.

Contrary to Judge Fiffie's assertion, *Steagald* emphasizes the importance of obtaining a search warrant. It encourages warrants, not discourages them. Judge Fiffie's misunderstanding of the law placed an extra-legal burden on law enforcement officers that threatened both their safety and investigations. Judge Fiffie engaged in a pattern of improperly rejecting or resisting warrant requests where probable cause existed. This reflected a lack of or misunderstanding of the law, delayed timely and effective investigations of potential criminal conduct, and created an appearance of bias against law enforcement. His practices were contrary to clear and determined law on probable cause and constitute judicial misconduct. *See In re Quirk*, 97-1143 (La. 12/12/97), 705 So.2d 172, 180-181 ("[A] judge may be found to have violated La. Const. Art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error.").

Clear and convincing evidence shows that Judge Fiffie violated: (1) Canon 1 because he failed to personally observe a high standard of conduct so as to preserve the integrity and independence of the judiciary; (2) Canons 2 and 2A because he failed to avoid the appearance of impropriety, to respect and comply with the law, and to act at all times in a manner that promotes public confidence in the integrity of the judiciary; (3) Canon 3A(1) because he failed to be faithful to the law and maintain professional competence in it; (4) Canon 3A(4) because he manifested bias or prejudice in the performance of his judicial duties; and (5) Canon 3A(7) because he failed to dispose of all judicial matters promptly, efficiently and fairly. This constitutes willful misconduct related to his official duty and persistent and public

11

conduct prejudicial to the administration of justice, which brought his judicial office into disrepute in violation of Article V § 25(C) of the Louisiana Constitution.

## Failure to comply with an appellate court order

An appellate court has supervisory jurisdiction over cases arising within its circuit. La. Const. art. V § 10. Judge Fiffie's failure to recognize this authority and comply with an appellate court's order constitutes judicial misconduct. *See In re Jefferson*, 99-1313 (La. 1/19/00), 753 So.2d 181, 193-94 (Judge's failure to obey an order issued by the Louisiana Supreme Court and to cooperate with a supernumerary judge constituted willful misconduct relating to his official duty and evidenced persistent and public conduct prejudicial to the administration of justice.); *see also In re Hunter*, 823 So.2d at 339 (Judge's failure to cooperate with the court of appeal and to comply with its orders was willful misconduct.).

Specifically, Judge Fiffie's failure to comply with a court of appeal order was: (1) a failure to personally observe a high standard of conduct so as to preserve the integrity and independence of the judiciary, in violation of Canon 1; (2) a failure to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity of the judiciary, in violation of Canon 2A; (3) a failure to be faithful to the law and maintain professional competence in it, in violation of Canon 3A(1); (4) a manifestation of bias or prejudice in the performance of his judicial duties, in violation of Canon 3A(4); and (5) a failure to maintain professional competence in judicial administration, in violation of Canon 3B(1). This was willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice, which brought his judicial office into disrepute in violation of Article V § 25(C) of the Louisiana Constitution.

## Recall of Judge Lewis' bench warrants

Judge Lewis clearly communicated to Judge Fiffie her request that he not recall her bench warrants without first consulting her. Judge Fiffie failed to comply

with that request in both *Rose* and *Tamborella*. Notably, the recall in *Tamborella* occurred shortly after Judge Fiffie was notified by the Commission that his actions in *Rose* were being investigated. While the law may not prevent Judge Fiffie from recalling another judge's bench warrants, he failed to cooperate with a colleague's reasonable request and failed to meaningfully communicate with her about the issue. This is judicial misconduct. *See In re Johnson*, 04-2973 (La. 6/3/05), 903 So.2d 408, 430 (Judge's refusal to cooperate with another judge was a violation.).

By clear and convincing evidence, Judge Fiffie failed to observe a high standard of conduct to preserve the integrity of the judiciary, in violation of Canon 1, and failed to cooperate with other judges and court officials in the administration of court business, in violation of Canon 3B(1). This was willful misconduct relating to his official duty, in violation of Article V § 25(C) of the Louisiana Constitution.

### Lack of cooperation

Judge Fiffie displayed a pattern of uncooperation. He refused to meaningfully consider the concerns of colleagues and law enforcement officers with respect to warrant requests. He refused to comply with a clear order of an appellate court. He refused to cooperate with Judge Lewis' request relative to her bench warrants. He resisted full cooperation with the Commission's investigation by being unprepared, failing to provide direct answers to questions, and repeatedly testifying that he did not recall specifics. A judge cannot refuse to engage in meaningful dialogue with others in the judicial system, especially when the judge's actions and opinions impede operations and the administration of justice. This is judicial misconduct. *See In re Hughes*, 03-3408 (La. 4/22/04), 874 So.2d 746, 771 (A judge starting court late after receiving communication from other judges regarding start time of court "speaks volumes about her unwillingness and inability to cooperate with the needs of the court as a whole.").

Judge Fiffie's failure to work cooperatively with others was a failure to observe a high standard of conduct to preserve the integrity of the judiciary, in violation of Canon 1, and a failure to cooperate with other judges and court officials in the administration of business, in violation of Canon 3B(1). This is willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice, which brought his judicial office into disrepute in violation of Article V § 25(C) of the Louisiana Constitution.

**Discipline**

Based on these violations, discipline is required. In imposing discipline, we are guided by the following: (a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent, and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires. *In re: Chaisson*, 549 So.2d 259, 266 (La. 1989).

*(a) Is the misconduct an isolated instance or does it evidence a pattern of conduct and (b) what is the nature, extent, and frequency of the acts of misconduct?*

Judge Fiffie's misconduct was not isolated. He displayed a pattern of a lack of knowledge, or misunderstanding the law, and stepping outside of his role as a neutral arbiter. He displayed a repeated reluctance or inability to consider the advice of others. His mishandling of warrants extended over many cases, including

14

situations where there was legitimate concern for the safety of others. Before the Commission, Judge Fiffie did not appear to truly grasp the severity of these errors.

*(c) Did the misconduct occur in or out of the courtroom and (d) did the misconduct occur in the judge's official capacity or in his private life?*

The misconduct occurred while Judge Fiffie was acting in his official capacity as a district judge. His failure to comply with an order of the appellate court occurred, in part, in open court. His recall of Judge Lewis' bench warrants occurred in open court.

*(e) Has the judge acknowledged or recognized that the acts occurred and (f) has he tried to change or modify his conduct?*

The Commission expressed concern that Judge Fiffie did not genuinely acknowledge and understand his misconduct. We share those concerns. While Judge Fiffie agreed that he should have acted differently, he did so reluctantly or because he was pressed by Commissioners. Based on Judge Fiffie's demeanor before the Commission, his lack of sincerity in preparing for the proceedings, his non-responsive answers during his appearance, and his lack of acknowledgement of any incorrect actions, the Commission found many of his responses lacked credibility. When concerns first arose regarding the review of warrants, Judge Fiffie neither accepted the feedback, nor considered the advice of other experienced judges. When they were raised again before the Commission, Judge Fiffie qualified his acknowledgment of his actions and continued to provide justifications.

Although he agreed he needs to check his phone more timely for 48-hour warrants, Judge Fiffie has not identified any meaningful action taken with respect to the warrant issues. His improved rejection rate appears related to officers changing their policies. This was acknowledged by Sheriff Tregre, who said his office has had better success with warrants because "we have forgone our normal operating procedures as it relates to the way law enforcement is conducted in St. John Parish." Thus, it appears Judge Fiffie continues to place burdens on law enforcement beyond

what is required by law, and the Sheriff's office has simply decided they must go above and beyond what is necessary to comply.

*(g) How long has the judge served on the bench?*

Judge Fiffie was elected in 2020 and took office in January 2021. He was on the bench just a few months before complaints were filed against him. Subsequent complaints were received after he was a judge for over a year. While we recognize that relative inexperience can be a mitigator, it also makes Judge Fiffie's refusal to consider the advice of more experienced judges inexcusable.

Judge Fiffie was not familiar with the "probable cause" standard for warrants. He should have been. He previously worked as a defense lawyer and as a prosecutor over his fifteen-year career as a lawyer. Judges are tasked with a basic understanding of the law. Significantly, Judge Fiffie recalled Judge Lewis' bench warrant in *Tamborella* just days after receiving notice that the Commission was investigating his same behavior in *Rose*. He should have known his actions were potential violations. Finally, Judge Fiffie had been a judge for over a year, and a lawyer for fifteen years, when he failed to comply with an appellate court order. His obligation to follow the order of a higher court is basic in the rule of law.

*(h) Have there been prior complaints about this judge?*

Judge Fiffie has no prior judicial complaints.

*(i) What effect did the misconduct have upon the integrity of and respect for the judiciary?*

Judge Fiffie's misconduct negatively impacted the integrity of and respect for the judiciary. In reviewing warrants, judges must faithfully and competently apply the law and do so in a timely manner. Judge Fiffie failed to timely act on warrants. He failed to grant warrants that stated probable cause. He requested that officers take actions or provide information beyond the requirements of law. His actions undermined and impeded law enforcement's ability to protect the public. The

16

integrity of the judicial system rests upon judges being unbiased, neutral arbiters of the law. When a judge steps outside this role, public confidence in the judicial system is diminished.

The general public is expected to fully comply with court orders. Members of the judiciary are no exception. In fact, judges must set an example for the public by following the orders of higher courts. *See In re Myers*, 16-0078 (5/3/16), 189 So.3d 1056, 1061 ("A judicial officer who refuses to abide by the law and refuses to comply with a court order is not worthy of holding the title of judge and sitting in judgment of others. A judgment issued by a judicial officer who refuses to respect the law or an order of a court will not be respected."). Judge Fiffie failed to follow the Fifth Circuit's order, and he questioned that order in open court. He refused to issue a bench warrant for a defendant who missed court after receiving proper notice. These actions diminished the integrity of the judicial system.

Finally, the failure to cooperate with judicial colleagues and law enforcement officers negatively affects respect for the judiciary.

*(j) To what extent did the judge exploit his position to satisfy his personal desires?*

There is no evidence that Judge Fiffie exploited his position as a judge to satisfy personal desires.

The Office of Special Counsel initially recommended a thirty-day suspension. The Commission was concerned Judge Fiffie did not sincerely recognize that his actions were wrong, appreciate their serious consequences, or have sufficiently modified his conduct. Thus, it recommended higher discipline, finding suspension without pay for six months, with three months deferred, and a two year-probation period appropriate. The Commission also recommended that Judge Fiffie undergo additional judicial education and regularly meet and confer with a mentor judge.

We find Judge Fiffie's misconduct caused substantial harm requiring serious discipline. In mitigation we recognize Judge Fiffie's relative inexperience as a judge

17

and his stated desire to do what he believes is right. However, his persistent refusal to acknowledge his errors, to take unqualified responsibility for them, and to listen to the advice and counsel of others is troubling. Discipline must impress the significance of Judge Fiffie's transgressions. *See In re Free*, 16-0434 (La. 6/29/16), 199 So.3d 572, 602-605 (Suspending a judge for one year in part because the judge's "appreciation of the depth and extent of his misconduct has evolved rather slowly over the course of the proceedings."). For his serious misconduct, we impose a six-month suspension, without pay. Judge Fiffie is ordered to reimburse costs of the Commission in the amount of $9,125.29.

## DECREE

Judge Vercell Fiffie violated Canons 1, 2, 2A, 3A(1), 3A(4), 3A(7), and 3B(1) of the Code of Judicial Conduct and committed willful misconduct in violation of Article V § 25(C) of the Louisiana Constitution. It is ordered that Judge Fiffie be and he is suspended from office without pay for six months. Judge Fiffie is further ordered to pay the Judiciary Commission of Louisiana $9,125.29 for costs.

18

# SUPREME COURT OF LOUISIANA

## No. 2024-CQ-00449

## POLICE JURY OF CALCASIEU PARISH

## VS.

## INDIAN HARBOR INSURANCE CO., ET AL.

*On Certified Question from the United States District Court for the Western District of Louisiana Lake Charles Division*

**WEIMER, C.J.**, additionally concurring.

I am in full agreement with the thorough analysis employed in the majority opinion to correctly answer the certified questions. I write separately to emphasize that an arbitration clause is separate and distinct from a forum or venue selection clause.

There is no question that compulsory arbitration clauses deprive the courts of *jurisdiction*, while forum or venue selection clauses do not. See **Creekstone Juban I, L.L.C. v. XL Insurance America, Inc**., 18-0748 (La. 5/8/19), 282 So.3d 1042, 1052-53 (Weimer, J., concurring). The statutory prohibition of agreements in insurance contracts which deprive Louisiana courts of the "jurisdiction of action" "is directed at agreements that have the effect of excluding judicial remedies," such as arbitration provisions. *Id.* at 1053. A forum selection clause is simply a provision which mandates a particular state, county, parish, or court as the proper venue. **Shelter Mut. Ins. Co. v. Rimkus Consulting Group, Inc. of Louisiana**, 13-1977 (La. 7/1/14), 148 So.3d 871, 873. By its plain language, La. R.S. 22:868(D) only applies to "forum or venue selection clause[s]" and cannot be read broadly to permit a clause pertaining to jurisdiction, such as an arbitration clause. The general

1

prohibition on agreements in insurance contracts that deprive courts of jurisdiction contained in La. R.S. 22:868(A)(2) must still be applied to prohibit arbitration clauses.

I recognize there has been some past jurisprudential suggestion that an arbitration clause is a type of venue or forum-selection clause. See, e.g., **Donelon v. Shilling**, 19-00514, p. 4 (La. 4/27/20), 340 So.3d 786, 790 n.6 ("An arbitration clause has been characterized by this court as a type of venue selection clause.") (citing **Hodges v. Reasonover**, 12-0043, p. 10 (La. 7/2/12), 103 So.3d 1069, 1076 ("An arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of disputes."); **Stadtlander v. Ryan's Family Steakhouses, Inc.**, 34,384, p. 11 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, 890 ("An arbitration agreement is a 'kind of forum-selection clause,'" ... "and that by agreeing to arbitrate a particular cause of action, parties do not forgo any substantive rights, but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.") These cases do not pertain to interpretation of La. R.S. 22:868 or the questions before this court. Additionally, the statements made in these cases appear to be *dicta*, and have no bearing on this court's current decision. To the extent any of these statements suggest there is no distinction between arbitration clauses and venue selection clauses in the context of interpreting La. R.S. 22:868, I find these statements to be incorrect statements of law.

2

**SUPREME COURT OF LOUISIANA**

**No. 2024-O-00976**

**IN RE: JUDGE VERCELL FIFFIE**
**FORTIETH JUDICIAL DISTRICT COURT**
**ST. JOHN THE BAPTIST PARISH**
**STATE OF LOUISIANA**

Judiciary Commission of Louisiana

**Hughes, J., dissenting in part.**

I have known judges who signed every warrant and ruled in favor of the State on every issue. That is one extreme. Unfortunately, Judge Fiffie's actions on occasion were extreme in the opposite direction. While independence and depth of analysis are valuable parts of being a judge, they can be negated by delay. Finding the balance is something we all have had to learn. I would impose a sanction less than that arrived at by the majority.

**IN RE: JUDGE VERCELL FIFFIE**
**FORTIETH JUDICIAL DISTRICT COURT**
**ST. JOHN THE BAPTIST PARISH**
**STATE OF LOUISIANA**

**Judiciary Commission of Louisiana**

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the majority opinion. I write separately to note that, in my view, Judge Fiffie's flagrant conduct in this case ran the gamut of canon violations that demonstrated persistent conduct prejudicial to the administration of justice, in violation of article V, section 25(C) of the Louisiana Constitution.

With respect to the issues described with the warrant requests, as outlined by the majority, Judge Fiffie exhibited a fundamental misunderstanding of the law, to the point that he appeared to abandon his role as a neutral arbiter. His actions hindered law enforcement operations at the potential risk to public safety. Then, to compound these initial problems, he displayed a stubborn resistance to feedback and seemed to believe his own views were infallible. This recalcitrance is exemplified by his failure to comply with an order from the court of appeal, which ultimately led that court to threaten him with contempt.

Perhaps most troubling to me is Judge Fiffie's conduct in his appearance before the Commission. He did not appear to appreciate the gravity of the allegations against him, and the Commission recognized Judge Fiffie's apparent inability to recognize the role of a judge within the judicial system or meaningfully acknowledge his errors. As described in the opinion, Judge Fiffie answered the Commission's pointed inquiries with "vague generalities," and failed repeatedly to give direct and clear answers to questions.

For these reasons, and as further described in the majority opinion, I support the discipline imposed here. The integrity of our system of justice demands no less.

# SUPREME COURT OF LOUISIANA

## No. 2024-O-00976

## IN RE: JUDGE VERCELL FIFFIE
## FORTIETH JUDICIAL DISTRICT COURT
## ST. JOHN THE BAPTIST PARISH
## STATE OF LOUISIANA

Judiciary Commission of Louisiana


**McCALLUM**, **J**., concurs in the result.

I join the majority in this result only because I was unable to gain a majority to impose a heavier sanction.

**SUPREME COURT OF LOUISIANA**

**No. 2024-O-00976**

**IN RE: JUDGE VERCELL FIFFIE**
**FORTIETH JUDICIAL DISTRICT COURT**
**ST. JOHN THE BAPTIST PARISH**
**STATE OF LOUISIANA**

*Judiciary Commission of Louisiana*

**GRIFFIN J., dissents and assigns reasons.**

The first complaint against Judge Fiffie came less than thirty days after his taking office. Considering his inexperience as a judge, I would impose a less severe sanction than the majority imposes. The majority opinion seeks to punish Judge Fiffie for his misconduct. However, protecting the public—not punishment of judges—is the primary purpose of the Code of Judicial Conduct. *See In re Best*, 15-2096, p. 14 (La. 6/29/16), 195 So.3d 460. The sanction imposed by the majority opinion goes beyond protecting the public.

For these reasons, I respectfully dissent.